WRIGHT *v.* DWIGHT.

1. Pleading—Action—Trover—Conversion—Plea of General Issue a Waiver of Defective Pleading.

Where the declaration, in an action for the unlawful conversion of an automobile, was entitled "a plea of trover," and contained a full statement of the case from plaintiff's point of view, charging that the plaintiff was legally entitled to the possession of the car, that the defendant had wrongfully secured the possession of it, and had unlawfully converted the same to his own use, and defendant pleaded the general issue only, not questioning the propriety of the pleading, he cannot now contend that, the action of trover having been abolished by the judicature act (3 Comp. Laws 1915, § 12350' a verdict should have been directed in his favor.

2. Same—Amendment—Trespass on the Case.

The trial court correctly held that the action, as shown by the declaration, was an action of trespass on the case for conversion, and that the word "trover," inadvertently used, might be stricken out by an amendment.

3. Conversion—Tender of Amount Due Before Bringing Action for Conversion.

*Held,* that, under the plaintiff's theory, all the demand and tender necessary or possible, considering the conduct of the defendant in immediately driving away when plaintiff attempted to make a tender of the amount he claimed to be due, was made.

4. Same—Title of Property—Notice.

Where defendant, an automobile dealer, claimed that a verdict in his favor should have been directed because the undisputed evidence showed that the title to the car in question was in a certain bank with which he did business, his claim is without merit, since the general public, in dealing with automobile dealers, cannot have, or be charged with, notice of their arrangements with their bankers.

5. Same—Trial—Instructions—Damages—Appeal and Error.

The charge of the trial court that, if the jury should find

for the plaintiff, the measure of his damages would be the value of the car less the sum of $100 and the Government tax, *held*, as favorable as defendant could properly demand.

6. NEW TRIAL—WEIGHT OF EVIDENCE.

In view of the fact that the trial judge declined to set aside the verdict upon the ground that it was against the great weight of the testimony, the Supreme Court will decline to disturb the judgment, although it is possible, or even probable, that were it determining the facts, a different result might be reached.

Error to Kent; McDonald (John S.), J. Submitted January 23, 1920. (Docket No. 32.) Decided April 10, 1920.

Case by Clyde Wright against Stanley A. Dwight for the unlawful conversion of an automobile. Judgment for plaintiff. Defendant brings error. Affirmed.

*Don E. Minor* (*G. A. Wolf,* of counsel), for appellant.

*John M. Dunham,* for appellee.

In the spring of 1917, plaintiff purchased from defendant, an automobile dealer, an "Allen" car. This car he made some payments upon, and on July 21, 1917, he exchanged the "Allen" car with defendant for a new "Dort" car, under a written contract, by the terms of which plaintiff agreed to pay in difference the sum of $425 at the rate of $20 per month. Plaintiff used the "Dort" car the balance of the year 1917, and perhaps a little in the early months of 1918.

While not working regularly for defendant, plaintiff had an arrangement with defendant, by the terms of which he was to receive commissions on all cars sold by him for defendant. It is conceded by defendant that some sales were made under this arrange-

ment but there is a dispute between the parties as to the number of them and the amount of the commissions earned by plaintiff thereon.

Plaintiff made the monthly payments on the "Dort" car until about January, 1918. This car seems to have been in defendant's garage most of the time, and certainly was there in February, March, and April, 1918. It is the claim of plaintiff that late in April or early in May, 1918, he made a contract with defendant by the terms of which he surrendered to defendant the "Dort" car and received from defendant a new "Crow-Elkhart" car, plaintiff agreeing to pay, as difference, the sum of $100 and the Federal war tax on the "Crow-Elkhart" car. Defendant had then lately secured the agency for the "Crow-Elkhart" car in his vicinity.

Plaintiff and defendant went to Elkhart, Indiana, where defendant secured two new "Crow-Elkhart" cars, which were driven by them to the city of Grand Rapids, where they arrived very late Saturday night, May 4th. The cars were left in defendant's garage and the next morning plaintiff went to the garage, in defendant's absence, and, against the protest of the man in charge, drove one of the new "Crow-Elkhart" cars away. The next day, plaintiff was called to Camp Custer to enter the military service under the draft act. He left the "Crow-Elkhart" car, on his departure, in a garage which he had provided for that purpose and locked the same.

Defendant interviewed plaintiff's wife that day and demanded the car, declaring that plaintiff had no right to it, and, indeed, practically charging plaintiff with having stolen the car. Plaintiff's wife having refused to deliver the car to defendant, defendant broke open the garage in which it was stored, took possession of it and has retained possession thereof and converted it to his own use.

It is in evidence that plaintiff's wife undertook to make settlement with defendant on the day following the recaption, but that defendant refused to discuss the matter, claiming that plaintiff had no interest in the "Crow-Elkhart" car. Plaintiff, himself, on the 25th of May, being in Grand Rapids on a furlough, attempted to make a tender of what he claimed to be due to defendant, but defendant refused to listen to any proposition of any kind and immediately drove away, thus making a legal tender, if one was in fact contemplated by plaintiff, futile.

It was defendant's claim that plaintiff, being unable to continue his payments on the "Dort" car, had surrendered the same voluntarily to defendant, and that no contract such as was claimed by plaintiff was ever made between the parties touching the "Crow-Elkhart" car. This action followed, and resulted in a verdict for the plaintiff in the sum of $845.

BROOKE, J. (*after stating the facts*). The first eleven assignments of error argued by appellant refer to admission or exclusion of testimony. We are of the opinion that no prejudicial error is disclosed under these assignments.

The twelfth assignment is based upon the refusal of the court to grant defendant's motion for a directed verdict, upon the following grounds:

"1. That the action was trover and could not be maintained under the judicature act of 1915 (3 Comp. Laws 1915, § 12350).

"2. That no lawful demand had been made upon defendant for the car in question before suit was brought.

"3. That from the undisputed evidence, the title to the car was not in plaintiff at the time suit was brought.

"4. That at the time this action was brought, the undisputed evidence showed the title of the car to be in the Ellis bank.

"5. That there had been no lawful tender made, nor had there been payment into court of the balance due upon the car."

We are of the opinion that this motion was properly refused for reasons hereinafter stated.

The thirteenth assignment is based upon the refusal of the court to charge as requested. The fourteenth is based upon the refusal of the court to grant a new trial and the fifteenth to the charge as given. The last four assignments will be discussed together.

The declaration was entitled, "a plea of trover," and contained a full statement of the case from plaintiff's point of view, charging that the plaintiff was legally entitled to the possession of the car; that the defendant had wrongfully secured the possession of it and had unlawfully converted the same to his own use. To this declaration, defendant interposed a plea of the general issue only.

It is now defendant's claim that the action of trover, being abolished by the judicature act of 1915 (3 Comp. Laws 1915, § 12350), a verdict should have been directed in his favor. The court held that the action, as shown by the declaration, was an action of trespass on the case for conversion. He further held that while the word "trover" was inadvertently used, it might be stricken out by an amendment. We are of the opinion that in so holding the learned circuit judge was right. Defendant was fully advised by the declaration of plaintiff's claims and chose to meet them by a plea of the general issue instead of seasonably questioning the propriety of the pleading.

Touching the claim that no demand or tender of payment was made before the commencement of the suit, we are of the opinion that, under the plaintiff's theory, all the demand and tender necessary or possible (considering the conduct of the defendant) was made.

The contention of the defendant that a verdict should have been directed because the undisputed evidence showed the title to the car in question to have been in the Ellis bank is, we think, without merit. Under some arrangement between defendant and the bank, defendant was permitted to have possession of the machine in question for the purposes of sale. The general public, in dealing with automobile dealers, cannot have, nor be charged with, notice of the arrangements the dealers make with their bankers.

The court instructed the jury that if they found plaintiff was entitled to recover, the measure of his damage would be the value of the "Crow-Elkhart" car, less the sum of $100 and the Government tax, evidence as to the amount of which was rather unsatisfactory, but which was fixed by the court in the charge at the sum of $50. This, we think, was as favorable an instruction on this question as defendant could properly demand. 4 Sutherland on Damages (4th Ed.), §§ 1111, 1136.

Counsel for defendant, in his brief and in his oral argument before this court, vigorously asserts that the judgment in this case operates, and, if affirmed, will continue to operate, as a gross miscarriage of justice. It is pointed out that the trial occurred shortly after the return of the plaintiff from participation in the war and at a time when the public appreciation of and sympathy for our returned soldiers was running high, and it is alleged that this feeling finds expression in the verdict of the jury. We may say, in passing upon this question, that the contract claimed by plaintiff is, certainly, a very unusual one. It is, however, supported by substantial testimony and the jury believed his claims. It is worthy of note, too, that the learned circuit judge declined to set aside the verdict upon the ground that it was against the great weight of the testimony. While it is possible,

perhaps even probable, if this court were determining the facts, a different result might be reached, we do not think, in the light of the view taken of the testimony by the circuit judge, we should disturb the verdict.

The judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.