OAKLAND NATIONAL BANK v ANDERSON

1. Bills and Notes—Acceleration Clauses—Claim and Delivery—Accelerated Balance.

Acceleration of the balance of the payments on a note may be commenced by filing a complaint for claim and delivery based on the accelerated balance.

2. Bills and Notes—Acceleration Clauses—Late Installments—Acceptance—Waiver of Acceleration—Claim and Delivery.

The acceptance of a late installment payment on a note containing an acceleration clause serves to reduce a defendant's indebtedness, but it does not cure all existing defaults; where an acceleration action has already been brought through a complaint for claim and delivery acceptance of a single late payment does not constitute a waiver of the acceleration of the balance of the note.

3. Bills and Notes—Acceleration Clause—Late Payments—Current Account—Acceleration of Payments.

Accepting late payments on an installment note containing an acceleration clause, where the payments were not timely made but the account was current at the time a complaint for claim and delivery was filed, prevents subsequent acceleration after acceptance of the late payments.

4. Contracts—Sales—Installment Sales—Vehicle Sales Act—Acceleration Clauses—Creditor Insecurity—Statutes.

The Motor Vehicles Sales Finance Act prohibits the inclusion of an acceleration clause for the reason that the lender deems itself insecure in any installment sales contract; an attempt to accelerate payment because of creditor insecurity, which was

References for Points in Headnotes
[1–4] 11 Am Jur 2d, Bills and Notes §§ 179, 181, 183, 294–296.
   67 Am Jur 2d, Sales §§ 420, 421.
   What is essential to exercise of option to accelerate maturity of bill or note. 5 ALR2d 968.
[2, 3] 11 Am Jur 2d, Bills and Notes § 296.
[5] 67 Am Jur 2d, Sales §§ 416, 417.
[6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 42, 43, 45.

written into an agreement, is invalid and the seizure of an automobile for that reason is unlawful (MCLA 492.114[b]; MSA 23.628[14] [b]).

5. SALES—INSTALLMENT SALES—MOTOR VEHICLES—DEFINITION—STATUTES.

An installment sales contract is defined as including any contract for the retail sale of a motor vehicle in the Motor Vehicles Sales Finance Act and including any loan or other form of contract which has a similar purpose or effect (MCLA 492.102[9]; MSA 23.628[2] [9]).

6. CONVERSION—MOTOR VEHICLES—UNLAWFUL SEIZURE—SALES CONTRACTS—ACCELERATION CLAUSES—DAMAGES.

The remedy for the unlawful seizure and sale of an automobile in violation of the Motor Vehicles Sales Finance Act is damages for conversion; a defendant is entitled to recover the value of the automobile at the time of conversion, less any amount due the lender at the time of sale, plus any incidental damages arising from the conversion.

Appeal from Oakland, Steven N. Andrews, J. Submitted November 14, 1977, at Detroit. (Docket No. 31510.) Decided February 22, 1978. Leave to appeal applied for.

Complaint by Oakland National Bank against Walter D. Anderson and others to accelerate payment of certain notes for default and for claim and delivery of the collateral used to secure the notes. Cross-claim by defendants for damages for unlawful seizure and sale of collateral. Judgment for plaintiff. Defendants appealed to the Court of Appeals which reversed and remanded for an adversary hearing in which the probable validity of the creditor's claim of repossession must be established (Docket No. 15788, decided August 1, 1973 [unreported]). Plaintiffs appealed to the Supreme Court which affirmed the Court of Appeals decision, 390 Mich 815 (1973). On remand, the circuit court entered judgment for plaintiff. Defendants appeal. Affirmed in part, reversed in part and remanded.

*Radner, Radner, Shefman, Bayer & Berlow, P. C.,* for plaintiff.

*Curtis G. Rundell II, P. C.,* for defendant.

Before: Bronson, P. J., and Allen and T. M. Burns, JJ.

T. M. Burns, J. In 1971, plaintiff made two loans to defendant in exchange for a security agreement on certain chattels and notes. The notes and security agreements included acceleration clauses in the event of a default. Also in 1971, plaintiff claimed default on the loans, instituted an action for claim and delivery, and seized the collateral without notice or hearing as then allowed by MCLA 600.2920; MSA 27A.2920 and GCR 1963, 757.

Defendant raised certain defenses to the claim and delivery action and claimed that the seizure without notice or hearing was unconstitutional. These points were rejected by the circuit court. The collateral was then sold at a sheriff's sale pursuant to a court order entered after the parties stipulated to the sale. The sale was confirmed by the circuit court.

In the appeal to this Court which followed, it was determined that the seizure of collateral was unconstitutional because done without notice or hearing. *Oakland National Bank v Anderson* (Docket No. 15788, decided August 1, 1973 [unreported]). The Supreme Court affirmed. 390 Mich 815 (1973). The hearing after remand from those decisions focused on whether defendant had a meritorious defense to the action for claim and delivery which would have allowed him to retain the collateral. See, Supreme Court Administrative Order, 1973-3.

Because the collateral had been sold, the issue actually was whether defendant could maintain his cross-complaint for damages arising out of the claimed illegal seizure and sale. The trial court determined that the bank was justified in accelerating the notes and determined that defendant had not presented a meritorious defense. The trial court ordered the proceeds of the 1972 sale delivered to the bank and dismissed all other claims in this suit. Defendant appeals from that judgment.

## I

There are two loans and two sets of loan documents involved in this case. In each, the actual borrower was the corporate defendant, U-Auto Lease Division, Bible Press, Inc. In the first, the bank loaned $52,783.80 and received a security agreement covering two scraper-tractors which were then at work in construction of a mobile home park. This loan was granted on April 16, 1971, and was to be repaid in 10 monthly installments, payments beginning July 15, 1971. The second loan, in the amount of $5,301.72, was given on May 12, 1971, and secured by a new station wagon. These transactions will be treated separately because of the different payment histories and the status of the loans at the time the action for claim and delivery was begun on September 3, 1971.

## II

The first payments due on the first loan, July 15 and August 15, had not been received when the initial complaint for claim and delivery was filed. A sum covering the July 15 payment plus interest and late charges was accepted by the bank on

September 3 or shortly thereafter. The defendant claims that by accepting this payment, the bank waived its right to accelerate the balance on the note, relying on *Theatre Equipment Acceptance Corp v Betman,* 259 Mich 245, 242 NW 903 (1932).[1]

In *Betman* the debtor had signed a series of notes, each of which included an acceleration clause for the subsequent notes in the series upon default. The debtor made only a partial payment on the first note but the creditor did not accelerate the other notes at that time. Thereafter, the debtor paid the full balance of the next two notes. Before the fourth note matured, the creditor attempted to accelerate all remaining notes because of the unpaid balance due on the first note. The Supreme Court found that the creditor had waived his right to accelerate based on default on the first note by accepting payment on the second and third notes.

*Betman* does not control here. The bank had properly accelerated the entire balance of the note by filing a complaint for claim and delivery based on the accelerated balance. *Cf. Hawes v Detroit Fire & Marine Insurance Co,* 109 Mich 324; 67 NW 329; 63 Am St 581 (1896). The acceptance of defendant's check by the bank served to reduce defendant's indebtedness on the note but it did not cure all the defaults which existed at the time, including the August 15 payment, nor did it waive the acceleration of the balance which had already occurred. See, *Paul Londe & Associates, Inc v Rathert,* 522 SW2d 609 (Mo App, 1975), *US Savings Bank v Continental Arms, Inc,* 338 A2d 579 (Del, 1975).

---

[1] Defendant also relies upon *Cable Co v Wasegizig,* 130 Mich 387, 90 NW 24 (1902), in his waiver argument. That case actually involves a question of estoppel. The debtor was told that if a payment were made, the collateral would not be seized. There is no claim of such an agreement here.

The trial court properly concluded that defendant did not state a meritorious defense to the bank's action on the first note. That matter is properly concluded.

### III

Different considerations apply in regard to the note covering the automobile. At the time the complaint was filed, the three payments which had become due had been paid. Although these payments had not been timely when made, this account was current at the time the complaint was filed. *Betman* properly applies here and prevents the subsequent acceleration after acceptance of the late payments.

The only other reason for invoking the acceleration clause of this security agreement appears to be that the bank deemed itself insecure.[2] If this transaction was subject to the Motor Vehicle Sales Finance Act, MCLA 492.101 *et seq.;* MSA 23.628(1) *et seq.,* then the "insecure" clause is invalid, MCLA 492.114(b); MSA 23.628(14)(b), and the bank's seizure of the automobile was unlawful. The trial court determined that the act was inapplicable.

MCLA 492.114(b); MSA 23.628(14)(b) prohibits the inclusion of the clause in question here in any "installment sales contract". Installment sales contract is defined in the act as including any contract for the retail sale of a motor vehicle and

---

[2] The security agreement provided: "The occurrence of any of the following events shall constitute a default: * * * (g) the bank deems itself insecure for any reason whatsoever." The note itself provided for acceleration only upon default in payment. The note, on the facts of this case, could not have been accelerated. The validity of the acceleration must rest on the security agreement.

The trial court dismissed various other "defaults" claimed by the bank because they had existed at the time the loan was given.

"shall include any *loan* * * * and any other form of *contract* which has a similar purpose or effect". MCLA 492.102(9); MSA 23.628(2)(9).

The security agreement here is covered by those provisions.[3] The form in which the security agreement and note are printed shows that this is a direct loan for a new automobile. The trial court erred in finding the act inapplicable.

The problem of a remedy remains since the automobile was sold many years ago. We hold that defendant is entitled to recover damages for conversion. Here, defendant can recover the value of the car at the time of the conversion, less any amount due to the bank at that time. *Wright v Dwight,* 209 Mich 678; 177 NW 209 (1920). Defendant may also recover incidental damages arising from the conversion. 22 Michigan Law & Practice, Trover and Conversion, § 15.

## IV

The other issues raised do not require extended discussion. The bank in no way deprived defendant of his right to post counter-bond and retain the collateral during the suit in 1971. See GCR 1963, 757.3 and MCLA 600.2920; MSA 27A.2920. Defendant never attempted to post bond and retain the collateral, but rather, decided to litigate the question on its merits.

The original sale of the collateral was done in a commercially     reasonable     manner.     MCLA

_____

[3] The bank makes two arguments to support its conclusion that the act does not apply, neither of which is persuasive. First, contrary to the bank's assertion, the Motor Vehicles Sales Finance Act was in effect when this transaction occurred on May 21, 1971. Second, MCLA 487.491(c); MSA 23.710(191)(c) regulates only the amount of interest allowable on installment loans. Other terms of such loans may be supplied by other legislation and, in this case, are in fact supplied by the Motor Vehicles Sales Finance Act.

440.9507(1); MSA 19.9507(1). The sale was pursuant to court order entered after a stipulation by defendant's attorney. It is not the manner in which the collateral was sold, but the fact that it was sold which resulted in defendant's recoverable loss.

Judgment affirmed as to the first note and reversed and remanded as to the second note. No costs, neither party having prevailed in full.