BARNES v MICHIGAN NATIONAL BANK CORPORATION

Docket No. 90650. Submitted October 16, 1986, at Detroit. Decided April 21, 1987.

Plaintiffs, Randy Barnes and Shelly Barnes, brought an action in the Eaton Circuit Court against Michigan National Bank Corporation, Sundance Chevrolet, Sundance Chevrolet, Inc. and General Motors Corporation. Plaintiffs sought damages from the dealership and the manufacturer that sold them a vehicle with which they were dissatisfied. Plaintiffs also sought relief from their obligation under a consumer loan agreement with the bank, the proceeds of which were used to purchase the vehicle. Motions for summary disposition were brought by all the parties. Plaintiffs alleged that the bank took subject to their defenses against the dealer relating to the vehicle and that they should be relieved of having to make the payments on the loan until the dispute with the dealer and manufacturer was resolved. Defendant bank alleged that the Motor Vehicle Sales Finance Act was inapplicable to the loan and sought judgment for the unpaid balance plus interest, costs and attorney fees. The trial court, Richard M. Shuster, J., found that the loan was a direct loan by the bank to the plaintiffs with no recourse by the bank against the dealer. The court determined that the loan agreement did not come under the terms of the Motor Vehicle Sales Finance Act and granted summary disposition in favor of the defendant bank. Plaintiffs appeal alleging that the trial court erred in holding that the loan was not an installment sales contract within the terms of the MVSFA.

The Court of Appeals *held:*

1. Where, as here, plaintiffs dealt directly with the bank, the MVSFA should not apply. Here, the loan agreement was solely between the plaintiffs and the bank, and the bank cannot be

REFERENCES

Am Jur 2d, Appeal and Error §§ 553, 558 *et seq.*

Am Jur 2d, Banks §§ 683 *et seq.*; 692, 693.

Am Jur 2d, New Topic Service—Consumer Product Warranty Acts §§ 284, 285.

See the annotations in the Index to Annotations under Automobile Dealers; Automobiles and Highway Traffic; Banks and Banking.

considered to be entering into dealer contracts or a "holder" of a contract for the installment sale of the vehicle. Here, the bank is not a party regulated by the MVSFA because this was a direct loan from the bank to the consumer plaintiffs.

2. The overriding consideration in this case is the true relationship between the bank and the plaintiffs, and the lack of any relationship between the dealer and the bank.

3. The trial court's judgment was not entered in violation of the rule regarding timely submission of a proposed judgment, nor was the provision for attorney fees in the judgment improvidently entered.

Affirmed.

1. AUTOMOBILES — MOTOR VEHICLE SALES FINANCE ACT — DIRECT LOANS TO PURCHASERS.

The Motor Vehicle Sales Finance Act does not apply to all circumstances which involve the sale of a motor vehicle; where purchasers of a motor vehicle deal directly with a financial institution and receive a direct loan and the lender has no recourse against the dealer, the act does not apply to the loan (MCL 492.101 *et seq.;* MSA 23.628[1] *et seq.*).

2. JUDGMENTS — COURT RULES — ORDERS.

The court rule regarding the entry of judgments and orders vests a trial court with discretion to allow the submission of a judgment or order beyond the seven-day period provided for such submission (MCR 2.602[B][3]).

3. APPEAL — PRESERVING QUESTION.

The failure to make a timely objection to a claim for attorney fees contained in a proposed judgment waives the issue of whether such fees were properly granted.

*Brussow & Krause, P.C.* (by *Richard C. Krause*), for plaintiffs.

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by *Donald B. Lawrence, Jr.*), for Michigan National Bank Corporation.

Before: GRIBBS, P.J., and HOOD and R. R. FERGUSON,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a

* Circuit judge, sitting on the Court of Appeals by assignment.

circuit court order which granted summary dispo-
sition as a matter of law in favor of defendant
Michigan National Bank Corporation on the basis
that a consumer loan agreement between plaintiffs
and the defendant bank did not come under the
terms of the Motor Vehicle Sales Finance Act
(mvsfa), MCL 492.101 *et seq.;* MSA 23.628(1) *et
seq.* The partial summary disposition in this case
involved only the plaintiffs and defendant bank,
and neither the defendant dealer nor the defen-
dant manufacturer of the 1983 Chevrolet S-10
Blazer financed by the consumer loan have filed
briefs in this appeal. Plaintiffs raise three issues
on appeal, none of which afford them any relief.

On June 29, 1983, plaintiff Randy Barnes con-
tracted to purchase the vehicle from the dealer for
$12,800. Mr. Barnes paid $1,200 with a trade-in
and the balance of $11,600 was paid with the
proceeds of a consumer loan which he obtained
directly from defendant bank. Apparently because
Mr. Barnes was a farmer whose typical income
pattern differed from that of most people, and
because of his longstanding relationship with the
bank, the loan was set up to provide for eight
semiannual payments.

In April, 1984, after the first installment pay-
ment had been paid in December, 1983, plaintiffs
became dissatisfied with the mechanical condition
of the vehicle, which by that time had approxi-
mately 18,000 miles on it, and filed the instant
suit seeking damages from the dealership and the
manufacturer. Plaintiffs also sought relief from
their obligation under the consumer loan agree-
ment with the bank. Plaintiffs alleged in their
summary disposition motion that the bank took
subject to their defenses against the dealer relat-
ing to the vehicle and that they should be relieved
of having to make the installment payments until

the dispute with the dealer and manufacturer was resolved. Defendant bank responded in its own motion that the MVSFA was inapplicable to the loan, and sought judgment for the unpaid balance plus interest, costs and attorney fees.

At the hearing on the summary disposition motions, the trial judge found that the loan papers had been drawn as a direct loan by the bank, at the bank, with no recourse by the bank against the dealer. The court concluded that the bank's retention of a security interest in the vehicle was insufficient to bring the loan within the MVSFA. In granting defendant bank's summary disposition motion, the judge opined that the purpose of the act is to leave the purchaser in a position of leverage against a party who could resolve the problem between the customer and the dealer. Since this was a direct loan without recourse, the bank had no leverage whatsoever to apply against the dealer.

Plaintiffs now contend that the trial court erred as a matter of law in finding that the agreement between themselves and the bank was not an installment sale contract within the terms of the MVSFA. Plaintiffs point to the definition of installment sale contract contained in MCL 492.102(9); MSA 23.628(2)(9) in support of their argument:

"Installment sale contract" or "contract" shall mean any contract for the retail sale of a motor vehicle, *or which has a similar purpose or effect* under which part or all of the price is payable in 2 or more scheduled payments subsequent to the making of such contract, or as to which the obligor undertakes to make 2 or more scheduled payments or deposits that can be used to pay part or all of the purchase price, *whether or not the seller has retained a security interest in such motor vehicle* or has taken collateral security for the buyer's

obligation, *and shall include any loan, any mortgage,* any conditional sale contract, any purchase-money chattel mortgage, any hire-purchase agreement or any contract for the bailment or leasing of a motor vehicle under which the hire-purchaser, the bailee or lessee contracts to pay as compensation a sum substantially equivalent to or in excess of the value of the motor vehicle and *any other form of contract which has a similar purpose or effect.* The terms shall not include any sale or contract for sale upon an open book account, wherein the seller has not retained or taken any security interest in the motor vehicle sold or any collateral security for the buyer's obligation, and wherein the buyer is not required to pay any sum other than the cash price of the motor vehicle sold in connection with such sale or extension of credit, and wherein the buyer is obligated to pay for the motor vehicle in full within 90 days from the time the sale or contract for sale was made. These terms shall also mean and apply to any extension, deferment, renewal or other revision of such installment sale contract. [Plaintiffs' emphasis.][1]

Plaintiffs argue that nowhere in the act is there any requirement that the loan be indirect rather than direct. Plaintiffs contend that the emphasized language brings the instant agreement within the scope of the MVSFA. However, plaintiffs' interpretation ignores the second sentence of § 2(9) as well as § 36 of the act, MCL 492.136; MSA 23.628(36). It is clear from these provisions that the act does not apply to all circumstances which involve the sale of a motor vehicle. The second sentence of § 2(9) provides that where the dealer has not retained or taken any security interest in the motor vehicle, and the buyer pays the dealer only the cash price

---

[1] This is the 1970 version of § 2(9) which was effective at the time this suit was commenced. The section was subsequently amended by 1984 PA 339, § 1, effective March 29, 1985. The amendment does not alter the meaning of the definition in any manner relevant to this case.

of the vehicle and pays for the motor vehicle in full in ninety days, there is no installment sale contract. By analogy, where, as here, plaintiffs dealt directly with the financial institution, it is apparent that the MVSFA should not apply.

Moreover, § 36 of the act provides that the act is not otherwise intended to apply to financial institutions such as banks, savings and loan associations and credit unions, stating:

> This act shall not affect or impair a business conducted lawfully under Act No. 21 of the Public Acts of 1939, as amended, being sections 493.1 to 493.26 of the Michigan Compiled Laws, Act No. 319 of the Public Acts of 1969, as amended, being sections 487.301 to 487.598 of the Michigan Compiled Laws, Act No. 156 of the Public Acts of 1964, as amended, being sections 489.501 to 489.920 of the Michigan Compiled Laws or Act No. 285 of the Public Acts of 1925, as amended, being sections 490.1 to 490.65 of the Michigan Compiled Laws.

In the case at bar, the agreement was solely between the plaintiffs and the bank, and the bank cannot be considered to be entering into dealer contracts or a "holder" of a contract for the installment sale of the vehicle. Instead, in this case, the bank is not a regulated party because this was a direct loan from the bank to the consumer plaintiffs.

Although plaintiffs argue that *Oakland National Bank v Anderson,* 81 Mich App 432; 265 NW2d 362 (1978), lv den 404 Mich 827 (1979), construes the MVSFA as applying to direct loans, the decision does so in dicta with no supporting analysis. The case cited the MVSFA as authority for the proposition that the bank's action in accelerating and declaring in default a direct loan financing a motor vehicle when the borrower defaulted upon a

separate loan was improper. While the result in
the *Oakland National Bank* case is probably cor-
rect, we believe that for the reasons already set
forth in this discussion, to the extent that that
case may be read as applying the act to direct
loans, the Court's reliance upon the MVSFA in that
case was misplaced.

The overriding consideration in this case is the
true relationship between the bank and the plain-
tiffs, and the lack of any relationship between the
dealer and the bank. The crux of the transaction
was that of a personal loan by the bank to the
plaintiffs, not dealer- or bank-induced financing of
the sale of the motor vehicle. As the trial court
correctly recognized, even if the bank was found to
be within the scope of the MVSFA and subject to
the defenses plaintiffs had against the dealer, the
bank is without recourse against the dealer.
Where, as here, the bank is an unrelated third
party which has made a separate transaction with
plaintiffs to extend them credit, we cannot con-
clude that the Legislature intended the bank to be
left "holding the empty bag."

Plaintiffs also argue that because defendant
failed to submit its proposed judgment within
seven days of the date of the hearing and because
plaintiffs never approved the judgment as to form,
the judgment was entered in violation of MCR
2.602(B)(3). Plaintiff's argument is incorrect. The
rule clearly vests the court with discretion to allow
the submission of the judgment or order beyond
the seven-day period. In this case, plaintiffs were
served with a copy of the proposed judgment in
advance of its January 27, 1986, entry, they do not
allege that the judgment was entered before they
had an opportunity to read it and their claim that
such entry was improper is without merit.

Finally, we reject plaintiffs' claim that the provi-

sion for attorney fees in the judgment was improvidently entered. The consumer loan agreement between the parties clearly provided for the bank's recovery of reasonable attorney fees in the event of plaintiffs' default. Although the trial court never directly addressed the question of attorney fees at the hearing, the bank's summary disposition motion included the claim. Defendant bank submitted its claim for attorney fees in the proposed judgment. Since plaintiffs filed no timely objection to the proposed judgment, we conclude that they waived the issue.[2] Under the circumstances, the trial court properly refused to set aside the award.

For the foregoing reasons, the decision of the trial court is affirmed.

[2] We note too that plaintiffs have supplied the Court with no transcript of argument on their March 27, 1986, motion to set aside the judgment and award of attorney fees.